IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TIMOTHY D. WILLHITE                                                                    PLAINTIFF

v.                      CIVIL NO. 17-2037

NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Timothy D. Willhite, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff protectively filed his current application for DIB on September 11, 2014, alleging an inability to work since April 25, 2014, due to degenerative disc disease (DDD) with pain in the lower back, no space in the vertebrae between L3-4, tiny central disc bulge or

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

protrusion at C7-T1 spondylotic ridging with biforaminal spurring particularly from C5-6 and C6-7 and to a lesser extent at C4-5 and C3-4, periodic pain in right shoulder, anxiety, and depression. (Tr. 171, 217). For DIB purposes, Plaintiff maintained insured status through December 31, 2016. (Tr. 14, 147). An administrative hearing was held on July 23, 2015, at which Plaintiff appeared with counsel and testified. (Tr. 28-59).

By written decision dated January 20, 2016, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 14). Specifically, the ALJ found Plaintiff had the following severe impairments: hypertension, DDD of the lumbar spine at L4-5 and L5-S1, DDD of the cervical spine at C3-4, C4-5 and C6-T1 and depression. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to work with simple tasks and simple instructions.

(Tr. 16). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a power screwdriver operator, a can filling and closing machine tender, and a labeler/stamper. (Tr. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 18, 2017. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 13, 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

At the time of the administrative hearing held on July 23, 2015, Plaintiff was forty-five years of age and had obtained a limited education at the ninth or tenth grade level. (Tr. 35). Plaintiff's past relevant work consists of work as a forklift operator, a material handler, a tractor operator, and a grass farmer. (Tr. 21, 201-208, 226).

A review of the pertinent medical evidence reflects the following. Plaintiff presented to the emergency department of St. Edward Mercy Medical Center on July 12, 2004, due to a motor vehicle accident (MVA) that occurred the week prior. (Tr. 237-247). He reported neck and middle back pain after being rear-ended. (Tr. 239). X-rays of his cervical and thoracic spine were negative for any fractures. (Tr. 244). Plaintiff was diagnosed with neck and upper back strain. (Tr. 244). Dr. Bruce Crabtree, M.D. recommended moist heat, medicated rubs, and massage, and he prescribed Plaintiff Flexeril and Lorcet. (Tr. 242, 245).

Several years later, on November 16, 2010, Plaintiff reported having chronic pain in the lumbar spine. (Tr. 279). Plaintiff's primary care physician, Dr. Robert Baker, D.O., found upon exam that Plaintiff exhibited decreased range of motion, pain, and spasm. (Tr. 279). Plaintiff was diagnosed with DDD and was prescribed Lorcet. (Tr. 279). On July 7, 2013, Plaintiff returned to Dr. Baker reporting chronic lumbar spine pain. (Tr. 281). Upon exam, he again had a decreased range of motion, pain, and spasm. (Tr. 281). Dr. Baker diagnosed him with DDD and prescribed Lorcet and also Robaxin. (Tr. 281). On July 17, 2013, Plaintiff reported chronic pain and stiffness in the lumbar spine with his symptoms aggravated by certain positions, twisting, and bending. (Tr. 280). Dr. Baker continued the DDD diagnosis and refilled Lorcet. (Tr. 280). On November 7, 2013, he again reported lumbar spine pain. (Tr. 281). Dr. Baker diagnosed the Plaintiff with DDD and refilled Lorcet and Robaxin. (Tr.

3

281). On February 25, 2014, Plaintiff was again diagnosed with DDD by Dr. Baker and this time he was prescribed Norco. (Tr. 283).

The medical evidence continues after the alleged onset date of April 25, 2014. On April 29, 2014, Plaintiff presented himself to Dr. Wallace Hays, D.C. for chiropractic care. (Tr. 342-344). He reported moderate neck, right shoulder, and right finger pain. (Tr. 342). A cervical spine X-ray showed misalignments at level 2-5, a thoracic spine X-ray revealed body heights within normal limits and misalignment at level 7, and a lumbar spine X-ray showed no congenital abnormalities. (Tr. 344). Dr. Hays projected he would need 20 treatments with an estimated duration of care to be less than 120 days. (Tr. 342).

Plaintiff returned to Dr. Baker on June 17, 2014, with low back pain. (Tr. 285-286). Upon exam, his blood pressure was 133/82, and he exhibited a decreased range of motion and pain in his lumbar back. (Tr. 285). A lumbar spine X-ray revealed normal alignment, the vertebral body and disc heights were well maintained, no fractures or destructive lesions were seen, and the impression was that there was no abnormality found. (Tr. 278). Dr. Baker diagnosed him with DDD, hyperlipidemia, hypertension, and male hypogonadism. (Tr. 286). Dr. Baker refilled Norco. (Tr. 286).

On September 14, 2014, Dr. Baker referred Plaintiff for a lumbar spine magnetic resonance imaging (MRI), and it showed mild degenerative changes in the facets, grossly stable vertebral body hemangiomas or lipomas, a small left renal cyst, and a mild diffuse disc bulge at L4- 5, but no significant disc protrusion was detected. (Tr. 271-272).

On October 7, 2014, Plaintiff again reported chronic lumbar spine pain that ached, but did not radiate. (Tr. 287, 291). Upon exam, he exhibited decreased range of motion and pain.

(Tr. 287, 291). Dr. Baker diagnosed him with DDD, but he decided to discontinue the Norco. (Tr. 287, 291-292).

On October 23, 2014, non-examining consultant, Dr. Bill Payne, M.D., completed a Physical RFC Assessment. (Tr. 66-69). Dr. Payne found that the records supported a medium RFC with no limitations. (Tr. 67).

On October 24, 2014, non-examining consultant, Dr. Christal Janssen, Ph.D., completed a Mental RFC Assessment. (Tr. 64-66). Dr. Janssen concluded there were no medically determinable mental impairments. (Tr. 65). Dr. Janssen also completed a Psychiatric Review Technique form, finding that Plaintiff had no evidence of a severe or marked mental impairment that would warrant further mental development. (Tr. 65).

On November 14, 2014, a cervical spine X-ray revealed slight posterior endplate spurring at C5-6 and C6-7. (Tr. 362-363).

On December 5, 2014, Plaintiff presented himself to Ms. Colleen Atchley, D.N.P., A.R.P.N. of Western Arkansas Counseling and Guidance Center for an initial visit, and he reported depression symptoms. (Tr. 294-297). He was last seen by Dr. Christina Couch, Psy.D. for therapy. (Tr. 294). He stated that he had not worked in at least a year, mentioned his disability denial, and he also reported chronic back pain. (Tr. 294). His mood was depressed or tearful at times, and Ms. Atchley found his mood to be congruent as well as extremely anxious and labile. (Tr. 296). She diagnosed Plaintiff with depressive disorder, generalized anxiety disorder, and rule out major depressive episode, single episode. (Tr. 296). Plaintiff was also diagnosed with chronic pain. (Tr. 296). Ms. Atchley found he had primary support group difficulties, occupational problems, economic difficulties with access to health care

services, and other psychosocial and environmental problems. (Tr. 296). She assessed his global assessment of functioning (GAF) score to be 50 at the time. (Tr. 296).

Ms. Atchley wrote that he was likely experiencing major depression, but she could not say with certainty it was not substance-induced or withdrawal problems. (Tr. 296). Plaintiff had a negative drug screen, he denied problems with alcohol or drugs, and there was no evidence to the contrary. (Tr. 296). Plaintiff reported he had not been taking Norco lately, he found Cyclobenzaprine not helpful, and he did not take Lisinopril as prescribed. (Tr. 294-295). Ms. Atchley decided to prescribe him a low dose of Clonazepam for evening use with a strong warning about potential interaction risks involved in taking it with his current medication. (Tr. 296). Plaintiff also began a trial of Depakote for anger and mood, and he was prescribed Mirtazapine for anxiety and sleep. (Tr. 296).

On January 2, 2015, non-examining consultant, Dr. Kristin Jarrard, M.D. completed a Physical RFC Assessment at the reconsideration level. (Tr. 79-80). Dr. Jarrard concurred with Dr. Payne's previous determination and found that the records supported a medium RFC with no limitations. (Tr. 80).

On January 7, 2015, non-examining consultant, Dr. Susan Daugherty, Ph.D., completed a Mental RFC Assessment at the reconsideration level. (Tr. 80-82). Dr. Daugherty found the record supported a finding of severe mental impairments and determined Plaintiff was capable of performing work where interpersonal contact is incidental to the work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct, and concrete. (Tr. 82). Dr. Daugherty also completed a Psychiatric Review Technique form, finding that Plaintiff had a mild degree of

limitation in activities of daily living; a moderate degree of limitation in social functioning and concentration, persistence, or pace; and no episodes of decompensation. (Tr. 77)

On January 15, 2015, Plaintiff was referred for a cervical spine MRI by Dr. Hays. (Tr. 357). The study revealed a tiny central disc bulge or protrusion at C7-T1, spondylotic ridging with biforaminal spurring particularly from C5-6 and C6-7, and similar findings to a lesser extent at the C4-5 and C3-4 levels. (Tr. 357).

On January 21, 2015, the Plaintiff returned to see Ms. Atchley. (Tr. 321-323). He was last seen for therapy by Dr. Couch on January 5, 2015. (Tr. 321). Ms. Atchley diagnosed Plaintiff with depressive disorder and anxiety disorder. (Tr. 321). She also diagnosed him with chronic fatigue, weight loss, chronic pain, high blood pressure and cholesterol, nausea or vomiting, change in memory or concentration, depression, irritability, and arthritis. (Tr. 321). The GAF score increased from 50 at the previous visit to 55 with the definition of the new score meaning moderate symptoms or moderate difficulty in social, occupational, or school functioning. (Tr. 321). Plaintiff reported feeling better, sleeping well, gaining weight, and he did not feel guilty or depressed. (Tr. 322). He stated he continues to worry, but no longer has racing thoughts that interfere with sleep. (Tr. 322). Plaintiff reported being more emotional in the last week due to family difficulties, specifically over the treatment of his stepdaughter's children with whom he is very close. (Tr. 322). He acknowledged that therapy has helped him. (Tr. 322). Ms. Atchley planned for him to increase Mirtazapine to one and a half tablets at bedtime and increased Clonazepam to twice a day as needed. (Tr. 322-323). Later in the month on January 29, 2015, Plaintiff returned to Dr. Baker for a follow up visit, and he was again diagnosed with DDD. (Tr. 359-360).

On March 18, 2015, Plaintiff reported to Ms. Atchley that his medications continue to be effective and well-tolerated. (Tr. 325). His last therapy was with Dr. Couch on February 9, 2015, and he found therapy to be helpful. (Tr. 324-325). Plaintiff reported improvement with his sleep, appetite, and energy level. (Tr. 325). Ms. Atchley continued the Depakote, Clonazepam, and Mirtazapine. (Tr. 325).

On April 1, 2015, Plaintiff returned to Dr. Hays for chiropractic care due to neck pain from a MVA the day prior. (Tr. 348). A cervical spine X-ray showed misalignments at levels 2-5, a thoracic spine X-ray revealed misalignments at level 5, and a lumbar spine X-ray showed misalignments at level 4. (Tr. 347). Dr. Hays projected he would need 27 treatments with an estimated duration of care of less than 150 days. (Tr. 348). On April 8, 2015, Plaintiff reported to Dr. Baker that he still had moderate neck pain. (Tr. 361). Dr. Baker diagnosed him with DDD and discontinued Soma. (Tr. 362). From April 30, 2015 to May 28, 2015, Plaintiff returned to Dr. Hays for chiropractic treatment 10 times. (Tr. 350-351).

On May 12, 2015, Plaintiff went to Mercy Clinic Orthopedics and presented himself to Mr. Benton Loggains, P.A-C. for an evaluation regarding his cervical neck pain that radiated to his right upper extremity. (Tr. 365-367, 369-370). Mr. Loggains noted that the Plaintiff presented with a history of neck pain which was mostly resolved from chiropractic treatments. (Tr. 365). Plaintiff reported he was involved in a MVA at the end of April, and he was unable to control his pain. (Tr. 365). After reviewing previous MRI studies, Mr. Loggains acknowledged Plaintiff's pain along the median nerve root distribution in the hand which correlated with the pathology on the cervical spine MRI. (Tr. 365). A cervical spine X-ray showed possible outlet stenosis on the right at C4-5. (Tr. 366). A thoracic spine X-ray was normal. (Tr. 367). Upon exam, there was no gross neurologic or thenar eminence wasting,

8

but he was positive for Tinel's sign and Phalen's maneuver. (Tr. 365). Mr. Loggains also noted that Plaintiff did not tolerate the physical examination well. (Tr. 365). He had pain in the lateral flexion to the right, extension of the neck produced pain, and lateral flexion caused pain to the trapezius as well. (Tr. 365).

Mr. Loggains remarked that Plaintiff's condition could be more carpal tunnel syndrome than cervical radiculitis, but the Plaintiff believed the pain stemmed from the MVA. (Tr. 365). Plaintiff was referred for an electromyogram and nerve conduction velocity (EMG/NCV). (Tr. 365). Due to Mr. Loggains concern about Plaintiff's multiple narcotic usage as well as benzodiazepines and possible interactions, his request for Soma was declined. (Tr. 365). Mr. Loggains wrote that Plaintiff's pain behaviors were out of context with the physical examination findings. (Tr. 365). In addition, a review of the medication history showed that despite reported improvement of pain, there was not any decrease in narcotic usage. (Tr. 365).

On May 29, 2015, Dr. Miles Johnson, M.D. administered the EMG to the Plaintiff. (Tr. 315-319). Dr. Johnson noted that he had right upper extremity pain, numbness, tingling, and weakness. (Tr. 316). After a medical history review and physical exam, Dr. Johnson diagnosed him with rule out radiculopathy vs. plexopathy vs. peripheral nerve involvement. (Tr. 316). It was a normal electrodiagnostic study of the right upper extremity and corresponding cervical paraspinal musculature. (Tr. 316, 318-319). Dr. Johnson wrote that was no electrodiagnostic evidence of radiculopathy, plexopathy, generalized peripheral neuropathy, or peripheral nerve entrapment syndrome or inquiry. (Tr. 316). Dr. Johnson found that the test was unrevealing for any neurologic compromise of the peripheral nervous system. (Tr. 316). Dr. Johnson noted that Plaintiff did appear to have some radicular complaints at the C6 and/or C7 distribution and

9

depending on what the imaging study showed, he opined that Plaintiff might benefit from treatments such as therapy, modalities, traction, and epidural steroid injections. (Tr. 316).

In June 2015, Plaintiff presented himself to Dr. Hays five times for chiropractic treatment. (Tr. 351-352). On June 12, 2015, he returned to see Mr. Loggains, and the medical provider noted that Plaintiff's EMG did not show obvious nerve compromise or peripheral nerve system disease. (Tr. 368). Due to a consistency in the pattern around C6 nerve root distribution, Mr. Loggains referred him to interventional pain management for a possible epidural steroid injection. (Tr. 368). Mr. Loggains noted that Plaintiff requested a referral to a neurosurgeon, but it could take months for an appointment to become available. (Tr. 368).

On June 17, 2015, Plaintiff returned to Ms. Atchley for medication management, and she diagnosed him with generalized anxiety disorder and major depressive disorder with anxious stress. (Tr. 327). His last therapy with Dr. Couch was May 18, 2015. (Tr. 327). Plaintiff's chief complaint was grief and worry due to his father's passing, his mother's poor health, lack of a working vehicle, and issues with his girlfriend of 20 years. (Tr. 327). He doubled the Clonazepam dose after his father passed away, but then returned to the regular dose. (Tr. 327-328). Nonetheless, he reported that the medications continued to be effective and did not want to make any changes. (Tr. 327). Plaintiff stated that his sleep, appetite, and energy were adequate. (Tr. 328). His mood was described as "pretty sad" and his affect was congruent and appropriate. (Tr. 328). Ms. Atchley advised him to continue taking his medications as prescribed. (Tr. 328). A few days later on June 22, 2015, a 90-day treatment plan review was completed. (Tr. 333-340). Ms. Atchley wrote that Plaintiff benefited from treatment, and that without it, his mental health would deteriorate and interfere with his daily functioning. (Tr. 340). The findings were to continue the plan and review in 90 days. (Tr. 340).

On July 8, 2015, Plaintiff reported to Ms. Atchley that he was discouraged because he was not getting to see his grandchildren as often as he would prefer, and he was worried about his upcoming disability hearing. (Tr. 330, 354). Plaintiff also stated that lately his pain was not well-controlled. (Tr. 331, 355). He reported he was no longer able to see the chiropractor because the office stopped accepting Medicaid. (Tr. 331, 355). In addition, he had become frustrated with having to wait to receive an epidural steroid injection. (Tr. 331, 355). He last had therapy with Dr. Couch on June 29, 2015. (Tr. 330, 355). Ms. Atchley noted that he was taking medications as prescribed with moderate effectiveness and no side effects. (Tr. 331, 355). Ms. Atchley considered increasing Depakote or Mirtazapine, but Plaintiff was not interested in a medication change. (Tr. 331, 355). His treatment plan was to continue taking Depakote, Clonazepam, and Mirtazapine as originally prescribed. (Tr. 331-332, 355-356).

On July 17, 2015, Plaintiff presented to the Pain Management Center, and he was diagnosed with cervical radiculopathy. (Tr. 374). Dr. Brian Goodman, M.D. administered a cervical epidural steroid injection to the Plaintiff that consisted of 80 milligrams of Depo-Medrol in the midline-right of his C7-T1 levels. (Tr. 374). On August 18, 2015, he returned to Dr. Baker complaining of generalized neck pain. (Tr. 376). Upon exam, his blood pressure was 136/91 and his cervical back exhibited decreased range of motion, pain, and spasm. (Tr. 376-377). Dr. Baker diagnosed him with DDD, hypertension, hyperlipidemia, and male hypogonadism. (Tr. 377). The notes revealed Norco was discontinued and labs were ordered. (Tr. 377). On December 16, 2015, Plaintiff presented to Dr. Baker again complaining of neck pain. (Tr. 378). Upon exam, his blood pressure was 128/79, and his cervical back exhibited decreased range of motion, pain, and spasm. (Tr. 378-379). Dr. Baker diagnosed him with

degeneration of the intervertebral disc of the lumbar region, cervical DDD, and pure hypercholesterolemia. (Tr. 379). He was prescribed Lipitor and Norco. (Tr. 379).

## III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§

423(d)(3), 1382(3)(C). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV. Discussion:**

Plaintiff raises the following issues on appeal: 1) Whether the ALJ erred in assessing Plaintiff's subjective complaints and erred in the credibility analysis; and 2) Whether the ALJ erred in his RFC determination. (Doc. 13).

**A. Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical

13

evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints. Plaintiff argues the ALJ found that Plaintiff's pain was exacerbated by walking and standing, and that degree of pain was substantiated by the record. The ALJ stated in his decision, "in this case that a degree of pain is substantiated by the record, however, the claimant's degree of pain relief seeking behavior and treatment is not indicative of a degree of pain that would limit activities beyond the scope of the residual functional capacity as determined in this decision." (Tr. 19). Although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity.

While the record reveals that Plaintiff has a history of neck and back pain, his pain appears to be well-controlled with conservative treatment. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). Plaintiff was consistently prescribed the same pain medications and muscle relaxants with little to no changes in dosage and minimal reported side effects. Plaintiff received only one epidural steroid injection during the relevant time period. He also admitted that chiropractic treatment often helped his symptoms. (Tr. 325). Plaintiff expressed concern over possible surgical intervention, but the record does not contain any surgical recommendations nor do multiple MRI studies, several X-rays, or an EMG study indicate the need for surgery.

The record indicates Plaintiff is awaiting an appointment with a neurosurgeon. (Tr. 368). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). The undersigned finds that other evidence in the record, including Plaintiff's own statements, constituted evidence regarding Plaintiff's physical limitations and that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding Plaintiff's alleged physical impairments. In addition, given that none of Plaintiff's medical providers reported functional or work related limitations, there was a basis to question his credibility. See Eichelberger v. Barnhart, 390 F.3d 584, (8th Cir. 2004).

A review of the record reveals that Plaintiff was able to take care of his personal needs with no problems; do light household chores like wash dishes and feed the dogs; to prepare simple meals; to drive; to spend time with others; to shop for groceries occasionally; to mow the yard for 15-20 minutes at a time, sometimes requiring assistance; to walk around his neighborhood for 20 minutes at a time; and to spend time watching television. (Tr. 42-43, 182-190).

As for Plaintiff's mental impairments, the medical evidence reveals that Plaintiff showed improvement with the use of medications and therapy. Plaintiff participated in therapy with Dr. Couch and found it helpful. (Tr. 325). He reported during follow up visits that his psychiatric medications continued to be effective and were well-tolerated, and Ms. Atchley agreed that the prescribed medications were effectively targeting symptoms with no side effects. (Tr. 321-329). Even when presented with the option to change the dose of his

medications as stressors in Plaintiff's life increased, he declined and chose to maintain the same treatment. (Tr. 327-332, 354-355).

Based upon the foregoing, as well as for those reasons given in Defendant's well stated brief, the undersigned believes there is substantial evidence to support the ALJ's credibility analysis.

**B.     RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. In determining that Plaintiff maintained the RFC to perform light work with limitations to work with simple tasks and simple instructions, the ALJ considered the medical assessments of the non-examining agency medical consultants; Plaintiff's subjective complaints; and his medical records. (Tr. 16).

Plaintiff contends the ALJ erred by not including right upper extremity radiculopathy as a severe impairment. The medical evidence does not support Plaintiff's contention because an EMG of his right upper extremity and corresponding cervical paraspinal musculature was within normal limits. (Tr. 315-319). The treatment records also do not reveal a history of reported radiating pain in Plaintiff's right upper extremity.

Plaintiff argues that the ALJ failed to include any limitations in the RFC that would account for his allegation that standing and walking exacerbated his pain. Plaintiff also contends that the ALJ did not include in the RFC any postural limitations even though he reported trouble bending, stooping, and twisting. In making his RFC determination, the ALJ discussed the relevant medical records, which in regards to the lumbar spine revealed no significant disc protrusion and only mild degenerative changes in the facets with a mild diffuse disc bulge at L4-5. (Tr. 271-272). Additionally, the cervical spine had merely a tiny central disc bulge or protrusion at C7-T1, spondylotic ridging with biforaminal spurring particularly from C5-6 and C6-7, and to a lesser extent C4-5 and C3-4. (Tr. 357).

Although physical examinations showed decreased range of motion in the back with pain and spasms, Plaintiff's treating medical providers did not assess any work related restrictions in the longitudinal record. His conservative treatment of chiropractic care, prescribed medications, and one epidural steroid injection throughout the years was also considered in the RFC determination. State agency assessments were the only opinions presented in the record. The ALJ assigned some weight to the opinions of Drs. Payne and Jarrard because additional evidence revealed Plaintiff was capable of work at the light and not the medium exertional level. (Tr. 20). Consequently, the records relating to the relevant time period do not support the severe limitations alleged by the Plaintiff.

17

Plaintiff contends that the ALJ erred because he assessed the physical RFC without a treating or examining physicians' RFC assessment in the record. Neither Social Security regulations nor Eighth Circuit case law dictate that an ALJ must obtain an RFC assessment from a treating source in order for the record to be complete. See Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007); 20 C.F.R. § 404.1546(c). Additionally, because the RFC is an administrative finding reserved to the ALJ, the law does not require a medical professional to opine on the Plaintiff's ability to perform work related activities in order for the record to be complete. See Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012) (claimant has burden of establishing RFC; while RFC assessment draws from medical sources for support and must be supported by some medical evidence, it is ultimately an administrative determination). The Plaintiff's contention that the ALJ drew upon his own inferences from the additional medical reports is without merit. The undersigned finds there is sufficient evidence in the record to support the ALJ's determination that Plaintiff can perform work at the light exertional level.

Plaintiff also alleges the ALJ erred in the mental portion of the RFC because he did not adopt the entirety of Dr. Daugherty's Mental RFC assessment or the hypothetical question to the vocational expert in his RFC determination. As stated previously, the ALJ, not a physician or a vocational expert, is responsible for assessing a claimant's RFC. "The ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002).

Based upon the foregoing, the undersigned finds there is substantial evidence to support the ALJ's RFC determination.

**V.     Conclusion:**

Based on the foregoing, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 4th day of December, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE